UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHARON BRISENO ,

          Plaintiff,

          -v-                 5:25-CV-405

ANN MARIE T. SULLIVAN, in her
Official Capacity, LI-WEN GRACE
LEE, M.D., Individually, CARMEN
BARBER, Individually, TONY TRAHAN,
Individually, YACINE OUNIS,
Individually, and DOES 1 and 2,
Individually,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

THE BELLANTONI LAW        AMY L. BELLANTONI, ESQ.
   FIRM, PLLC
Attorneys for Plaintiff
2 Overhill Road, Suite 400
Scarsdale, NY 10583

HON. LETITIA A. JAMES      BRITTANY M. HANER, ESQ.
Attorney General of the State
   of New York
The Capitol
Albany, NY 12224-0341

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On April 1, 2025, Sharon Briseno ("plaintiff" or "Briseno"), a resident of New York, filed this 42 U.S.C. § 1983 action alleging violations of her Second, Fourth, and Fourteenth Amendment rights when she was erroneously reported on state and federal databases as having been admitted to a hospital for a mental health issue. Dkt. No. 1. Plaintiff's complaint names the following parties as defendants: (1) Ann Marie T. Sullivan, M.D. ("Sullivan"), in her official capacity as the Commissioner of the New York State Office of Mental Health ("OMH"); (2) Yacine Ounis ("Ounis"), an employee of the New York State Office of NICS Appeals ("ONA"), an entity within OMH, in their individual capacity; (3) three members of the ONA's review panel: Li-Wen Grace Lee, M.D. ("Dr. Lee"), Carmen Barber ("Barber"), Tony Trahan ("Trahan") (the "Panel Members") in their individual capacities; and (4) unnamed defendants Doe 1, an OMH employee, and Doe 2, an OMH employee (collectively the "defendants") in their individual capacities. *Id.*

Briseno's complaint seeks injunctive, monetary, and declaratory relief.[1] On June 20, 2025, defendants moved to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

---

[1] As discussed *infra*, however, plaintiff has withdrawn her request for injunctive relief.

Dkt. No. 14. That motion has been fully briefed and will be considered on the basis of the submissions and without oral argument. Dkt. Nos. 1, 14-1, 19, 22.

## II. BACKGROUND

Given the complex legal regime underlying plaintiff's claims, the Court will begin with an overview of the relevant federal and state laws and regulations before proceeding to discuss the allegations set forth in plaintiff's complaint.

### A. The Legal Framework of Background Checks

Motivated to prevent guns from falling into the wrong hands, federal law has regulated sales made by licensed firearms dealers for over 57 years pursuant to the passage of the Gun Control Act of 1968. *Susman v. Sullivan*, 2025 WL 575515, at *4 (W.D.N.Y. Feb. 21, 2025) (quoting *Abramski v. U.S.*, 573 U.S. 169, 172 (2014)); *see also* Gun Control Act of 1968, 18 U.S.C. § 921 *et seq*. This legislation "created a number of provisions designed 'to deny access to guns and ammunition to […] defined special risk groups." *Richey v. Sullivan*, 2025 1836492, at *1 (quoting *Phelps v. Bosco*, 711 F. App'x 63, 64 (2d Cir. 2018)) (summary order) (cleaned up). "[U]nder 18 U.S.C. § 922, individuals who fall into one of several enumerated categories are prohibited from 'possess[ing]' or 'receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *Susman*, 2025

- 3 -

WL 5575515, at *4 (quoting § 922(g)(1)–(9)). As relevant here, § 922(g)(4) prohibits any individual "who has been adjudicated as a mental defective or who has been committed to a mental institution" from purchasing or otherwise possessing a firearm. *Id.* (quoting § 922(g)(4)).

"In 1993, to better enable enforcement of its gun control laws, Congress enacted the Brady Handgun Violence Prevention Act ('Brady Act'), which is codified at 18 U.S.C. § 922(t)." *Susman*, 2025 WL 5575515, at *4 (citing *Robinson v. Sessions*, 721 F. App'x 20, 21–22 (2d Cir. 2018)) (summary order). "The Brady Act 'require[d] the Attorney General to establish a national instant background[ ]check system by November 30, 1998.'" *Id.* (quoting *Printz v. U.S.*, 521 U.S. 898, 902 (1997)). "The result was NICS, which refers to the system managed by the FBI ... that provides information 'on whether receipt of a firearm by a [particular person] ... would violate [f]ederal or state law.'" *Susman*, 2025 WL 575515, at *4 (citing 28 C.F.R. § 25.2).

"Federal law and its related regulations spell out how NICS operates." *Id.* As such, "while NICS is a creation of the federal government, it operates with assistance from the states." *Id.* at *5. "[T]he NICS Index includes records from both federal and state agencies. *Id.* (citing 28 C.F.R. § 25.2). Indeed, "[i]n 2007, Congress passed the NICS Improvement Amendments Act" in an effort "to make the federal background check system more comprehensive,

including by providing grants to assist states in submitting all relevant records to NICS." *Id.* (citing NICS Improvement Amendments Act of 2007, Pub. L. 110-180, 122 Stat. 2559).  In order to receive grants, "states also must have an administrative process by which anyone barred under federal law from owning firearms based on a mental health event may obtain a certificate of relief from firearm disabilities." *Id.* (citing NICS Improvement Amendment Acts of 2007, § 105 (codified at 34 U.S.C. § 40915)).

"In response to the NICS Improvement Amendments Act, 'New York State law was amended to allow relevant mental health records to be made accessible to NICS.'" *Susman*, 2025 WL 575515, at \*5 (quoting *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 316 (W.D.N.Y. 2018).  This statutory provision, § 7.09 of New York's Mental Health Law ("MHL"), sets forth that:

> [t]he commissioner [of OMH], in cooperation with other applicable state agencies, shall collect, retain or modify data or records, and shall transmit such data or records: (i) to the division of criminal justice services, or to the criminal justice information services division of the [FBI], for the purposes of responding to queries to [NICS] regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 [U.S.C. §] 921(a)(3), in accordance with applicable federal laws or regulations.... Such records, which may not be used for any other purpose, shall include [the] names and other non-clinical identifying information of persons who have been involuntarily committed to a hospital pursuant to article nine of this chapter [among other statutes].

N.Y. MENTAL. HYG. LAW § 7.09(j)(1).  "In accordance with congressional requirements, MHL § 7.09(j)(2) provides for relief from disabilities program.

- 5 -

*Susman*, 2025 WL 575515, at \*6 (citing *Houston v. Nassau Cnty. Police Dep't*, 2020 WL 7643132, at \*3 (E.D.N.Y. Dec. 23, 2020) ("New York Mental Health Law § 7.09 sets forth a process for removing a name from the NICS list by seeking a [Certificate] […] based on a determination as to whether the person's record and reputation are such that such person will not be likely to act in a manner dangerous to public safety and where the granting of the relief would not be contrary to public safety.") (cleaned up).

## A.  Plaintiff's Hospital Visit

Briseno is a resident of Cayuga County, New York.  Compl. ¶ 4.  On May 24, 2020, she experienced an adverse physical reaction to Prednisone, a steroid medication prescribed by her primary care physician.  Her husband drove her to Auburn Community Hospital ("ACH"), where she was first seen by "triage staff" at 8:11 p.m.  *Id*. ¶¶ 64–67.

Thereafter, Briseno alleges she was interviewed by a student social worker who recommended she "be admitted to the behavioral health unit."  *Id*. ¶ 68.  The student social worker then conveyed this recommendation to an emergency room ("E.R.") doctor who treated Briseno but did not admit her to the behavioral health unit.  *Id*. ¶ 69–71.  According to plaintiff, the E.R. doctor did not perform a psychiatric exam, instead only ordering bloodwork before concluding Briseno was having an adverse reaction to Prednisone.  *Id*. ¶¶ 72–73, 75.

At approximately 2:00 a.m., the E.R. doctor treated plaintiff's adverse response to Prednisone with medication that resolved her symptoms by 2:35 a.m. Compl. ¶ 76. The E.R. doctor advised plaintiff to stop taking the Prednisone and recommended she remain at ACH overnight in case further treatment was required. *Id*. ¶¶ 78–79. Plaintiff declined and freely left ACH. *Id*. ¶ 80–81. According to Briseno, at no point during this visit was she ever involuntarily committed as would be recognized under any section of the MHL, that her hospital records substantiate this, and that neither the E.R. doctor nor ACH ever reported her visit to the OMH as an involuntary admission. *Id*. ¶¶ 81–84.

### B. <u>Hospital Audit</u>

At least three years after Briseno's emergency visit, she contends that an audit (the "Audit") was conducted at ACH regarding their reporting of individuals admitted for mental health reasons to the OMH. *Id*. ¶¶ 85–86. Briseno contends the Audit was conducted at the direction of defendant Doe 1 and/or the Panel Members, and that it led to ACH inadvertently reporting her May 2020 visit to OMH's National Instant Criminal Background Check System ("NICS") database as an involuntary admission pursuant to MHL § 9.39. *Id*. ¶ 87. As a result, plaintiff contends OMH reported her and she was ultimately listed in the New York State Division of Criminal Justice Services ("DCJS") and NICS reporting databases as "a person prohibited from

possessing firearms" pursuant to 18 U.S.C. § 922(g)(4).  *Id.* ¶¶ 6, 88–89.

Plaintiff contends she was falsely reported because, as alleged *supra*, she was

never admitted to the hospital "under any provision of MHL Article 9."  *Id.*

90–91.

### C.  **Revocation of Plaintiff's New York State Pistol License**

Plaintiff alleges she has been a licensed firearm owner in New York State

without incident since 1980.  Compl. ¶ 92.  Once OMH reported her to DCJS

and NICS as a person prohibited from possessing firearms, Briseno contends

that the New York State Police ("NYSP") were immediately notified.  *Id.* ¶

94–95.  The NYSP then informed Cayuga County's firearm licensing officer

that plaintiff was prohibited from possessing firearms due to her

involuntarily commitment to a mental hospital.  *Id.* ¶ 97.    Thereafter,

plaintiff received a letter from the Cayuga County handgun licensing office

dated July 17, 2023 informing her she was prohibited from possessing

firearms and to immediately surrender her Cayuga County Pistol Permit

along with "any/all pistols, long guns, and other firearms" she possessed to

the Cayuga County Sherriff's Department.  *Id.* ¶ 98.  Plaintiff complied with

the letter and eventually learned she was in the OMH reporting database

because of her visit to ACH in 2020.  *Id.* ¶ 103.

## D.  <u>Briseno's Communications with the ONA</u>

At some point thereafter, plaintiff contacted the ONA seeking to correct the false information in the OMH, DCJS, and NICS databases.  *Id.* ¶ 107.  According to Briseno, she spoke with Ounis, an ONA attorney, where she informed him she was never admitted by ACH, involuntarily or otherwise, and that her hospital records make this clear.  *Id.* ¶¶ 108–111.  Plaintiff contends she forwarded these hospital records to Ounis to have her information removed from the OMH, DCJS, and NICS databases and properly reflect that she was not a "prohibited person" under § 922(g).  *Id.* ¶¶ 112–14.

Despite reviewing her hospital records, plaintiff alleges Ounis took no action to remove her from the OMH, DCJS, or NICS databases, instead telling her "it doesn't matter" what her hospital records reflect and that she must file an Application for a Certificate of Relief (the "Application") to have her rights restored and record of involuntary admission removed by the ONA.  *Id.* ¶¶ 115–21.  Plaintiff asserts that this failure to amend, correct or remove plaintiff from "the NICS Indices, DCJS, or the OMH" ran counter to a federal requirement that states must correct or remove records from the NICS database once it becomes aware that there is no basis for such a record.  *Id.* ¶ 144.  According to Briseno, Ounis informed her the only way she could restore her right to possess firearms was to submit an Application.  *Id.* ¶ 150.

### E.  Plaintiff's Application

In response, plaintiff "reluctantly" retained an attorney for the purposes of representing her as she prepared the Application.  Compl. ¶ 153.  Briseno alleges she was required to "provide her hospital records, medical records for the past 20 years, and other personal information and documents to ONA, which she did." *Id*. ¶ 155.  Upon doing so, plaintiff alleges that her packet and records were forwarded to the Panel Members for review.  *Id*. ¶¶ 156–57. It is plaintiff's contention that while the Panel Members, through their review, discovered nothing regarding her May 2020 visit to ACH constituted an involuntary admission, they still "took no action to remove [her] date and information from the NICS Indices, DCJS, or the OMH reporting database[,]" and their failure to do so barred the redemption of her Second and Fourth Amendment rights.  *Id*. ¶¶ 157–173. Plaintiff asserts that upon learning she was never admitted to the hospital under the MHL, the Panel Members should have proceeded to correct her record and remove her information from the "NICS Indices, DCJS, or the OMHS reporting databases.  However, the Panel Members instead continued processing her Application and held her to certain additional requirements for further consideration. *Id*. ¶ 174.  Plaintiff was required to receive a forensic psychiatric examination conducted by an OMH psychiatrist to receive "further consideration of [her] application.  *Id*. ¶¶ 175–76.  In addition, the Panel Members required that her husband to be

interviewed. *Id*. ¶ 177.  Plaintiff refused these two requests and, around October of 2024, submitted a letter to the Panel Members to withdraw her Application. *Id*. ¶¶ 178–181.  Indeed, plaintiff received confirmation from Panel Members that her application was withdrawn. *Id*. ¶ 182.  Around this same time, plaintiff retained an attorney to bring suit against defendants for the alleged violations of her Second, Fourth, and Fourteenth Amendment rights.  Compl. ¶ 183.

### F.  Issuance of Certificate of Relief & Reinstatement

Despite withdrawing her application, plaintiff received a letter from the Panel Members dated January 7, 2025 informing her that a Certificate of Relief (the "Certificate") had been issued and reported to DCJS and NICS. Compl. ¶ 184.  Plaintiff alleges this letter admits "the lack of any documentation indication that [Plaintiff was] involuntarily admitted to the [Hospital's Behavioral Health Unit] …" *Id*. ¶ 188.   However, despite OMH's alleged admission that they "pushed erroneous data into the NICS Indices[,]" plaintiff contends that defendants failed to "t[ake] any action to cancel the false and erroneous information and remove it entirely from the NICS Indices." *Id*. ¶ 189.

After receiving the Certificate, plaintiff alleges she forwarded it to the Cayuga County licensing officer to whom she was "required to appeal in person before […] to discuss the circumstances underlying the letter."  Compl.

¶¶ 196–97. A few weeks later, the Cayuga County licensing officer reinstated Briseno's pistol license. *Id.* ¶ 198. However, on March 20, 2025, plaintiff attempted to purchase a hunting shotgun but "received a 'Deny' response from the NYSP" because of her May 2020 visit to ACH. Comp. ¶ 199–200. Plaintiff attributes this denial to defendant Doe 2's "fail[ure] to enter the Certificate of Relief information into the OMH database[,]" causing plaintiff to continue to be identified as a "prohibited person" in the OMH, DCJS, and NICS databases. *Id.* ¶ 203.

Even further, plaintiff argues that because of defendant Doe 2's failure to act and the triggering of the "deny" response, the NYSP forwarded a letter to the Cayuga County Licensing Officer to once again inform them that plaintiff is a "prohibited person" and requiring that her pistol license be suspended. Compl. ¶ 204. Even further, plaintiff contends the Cayuga County Sheriff's Office informed her that she cannot recover the handguns she turned over because she remains classified as a "prohibited person" by both the DCJS and NICS. *Id.* ¶ 205.

In plaintiff's view, the actions and/or failures to act by the defendants violated her Second and Fourth Amendment rights, entitling her to damages. *Id.* She asserts the defendants' conduct also constitutes an ongoing violation of her Second and Fourth Amendment rights and presents an absolute

barrier to the exercise of conduct presumptively protected under the Second

Amendment.  *Id.* ¶¶ 216–17.

## III.   LEGAL STANDARD

### A.  Rule 12(b)(1)

The Federal Rules of Civil Procedure permit a party to move to dismiss a

complaint for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). "A

case is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). The

plaintiff bears the burden of proving subject-matter jurisdiction by a

preponderance of the evidence.  *Id.*

"'In resolving a motion to dismiss under Rule 12(b)(1), the district court

must take all uncontroverted facts in the complaint ... as true[ ] and draw all

reasonable inferences in favor of the party asserting jurisdiction.'"  *Cayuga

Nation v. N.Y.S. Gaming Comm'n*, 2025 WL 959204, at *3 (N.D.N.Y. Mar. 31,

2025) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d

239, 243 (2d Cir. 2014)).

### B.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual

allegations must be enough to elevate the plaintiff's right to relief above the

speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So

while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV.  DISCUSSION

Plaintiff's five-count action brings the following claims: (1) a violation of her Second and Fourteenth Amendment rights pursuant to § 1983 against all defendants sued in their individual capacity; (2) a violation of her Fourth Amendment rights pursuant to § 1983 against the individual capacity defendants; (3) a violation of her Fourth Amendment rights pursuant to § 1983 against Sullivan and the Panel Members; (4) a violation of her Fourteenth Amendment rights pursuant to § 1983 against Sullivan and the Panel Members; and (5) a § 1983 claim asserting that defendants Sullivan

and the Panel Members violated 18 U.S.C. § 925A and 28 C.F.R. § 25.10 when they failed to amend and/or remove her information from the OMH, DCJS, and NICS databases (Count 5).  Compl. ¶¶ 218–227.

Defendants now move to dismiss plaintiff's complaint, arguing that: (1) plaintiff lacks standing because she has not alleged that her Second Amendment injuries are traceable to OMH; (2) Ounis and the Panel Members are entitled to immunity; (3) claims against Sullivan in her official capacity should be dismissed on quasi-judicial or sovereign immunity grounds; (4) plaintiff fails to plausibly allege a Fourth Amendment claim; (5) Briseno fails to plausibly allege a Fourteenth Amendment claim; and (6) plaintiff's § 1983 claim against Commissioner Sullivan and the Panel Members, for alleged violations of 18 U.S.C § 925A and 28 C.F.R. § 25.10 must be dismissed because, in addition to being barred by the Eleventh Amendment, Briseno has not established the requisite personal involvement and defendants did not violate either provision.  Defs.' Mem., Dkt. No. 14-1, at 16–34.[2]

Plaintiff opposes dismissal.  Pl.'s Opp'n, Dkt. No. 19.  In plaintiff's view, her allegations satisfy the Article III standing requirements, neither the Panel Members nor Sullivan are entitled to quasi-judicial immunity where they failed to perform a ministerial function, no defendant in this action is

---

[2] Pagination corresponds to CM/ECF headers.

entitled to qualified immunity, and she has plausibly alleged a § 1983 claim

for a violation of her Fourth Amendment rights. *Id.* at 13–32.

### A. Standing

Broadly stated, plaintiff claims the defendants violated her Second

Amendment rights by denying her the ability to own, possess, or purchase

firearms due their erroneous reporting of her to the NCIS and DCJS

databases as having been "involuntary committed."  Compl. ¶¶ 6, 88–89.

According to plaintiff, she presented hospital records to defendant Ounis to

demonstrate she was erroneously entered into the OMH database, that both

Ounis and the Panel Members failed to cure the error and their failure to

promptly fix the problem effectively barred her from exercising her rights

under the Second Amendment for over a year.  *See generally id.*  Defendants

have now moved to dismiss plaintiff's complaint, first by contending that she

lacks the requisite Article III standing to bring suit.  Defs.' Mem. at 16–18.

Article III of the United States Constitution "restricts courts to the

resolution of cases and controversies[.]"  *Carter v. HealthPort Techs., LLC*,

822 F.3d 47, 55 (2d Cir. 2016) (quoting *Davis v. Fed. Election Comm'n*, 554

U.S. 724, 732 (2008)).  Due to this restriction, "the party invoking federal

jurisdiction must have standing—the personal interest that must exist at the

commencement of the litigation."  *Id.* (quoting *Davis*, 554 U.S. at 732).  A

plaintiff must demonstrate three elements to satisfy "the irreducible

constitutional minimum of standing." *Id*. (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

First, a plaintiff must show that "[s]he suffered an injury in fact that is concrete, particularized, and actual or imminent[.]" *TransUnion LLC v. Ramirez*¸ 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560). Next, the plaintiff must demonstrate "a causal connection between the injury and the conduct complained of—the injury has to be "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the Court." *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). Third, the plaintiff must demonstrate their "injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan*, 504 U.S. at 560)). Finally, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889 (1990)).

In defendants' view, plaintiff's allegations do not satisfy the second element because Briseno "cannot establish that any of [her] alleged Second Amendment injuries are traceable to OMH." Defs.' Mem. at 16. Defendants argue that plaintiff's alleged "injury is caused by 18 U.S.C. § 922(g)" which is

"a statute [which] OMH does not enforce and that the [p]laintiff does not challenge." *Id.* at 17. Further, insofar as ACH erred by classifying Briseno's July 2020 visit as an involuntary admission, defendants assert that OMH nonetheless "acted promptly to correct the error [ ] in accordance with its procedures as soon as it had an obligation to do so." *Id.*

"The traceability requirement for Article III standing means that the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (quoting *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992)) (cleaned up). "Such a nexus is most easily shown if there is a direct relationship between the plaintiff and the defendant with respect to the conduct at issue." *Id.*

Plaintiff alleges that three years after her visit to ACH, an audit was conducted regarding the hospital's reporting of individuals who were admitted for mental health reasons. Compl. ¶¶ 85–86. In plaintiff's view, her visit to ACH was reported by the defendants to OMH's NICS database as an involuntary admission under MHL § 9.39 for the purpose of reporting her to the NICS and DCJS databases under § 922(g)(4), which OMH ultimately did. *Id.* ¶¶ 87–89. But plaintiff contends OMH erred by reporting her since she had never been committed. *Id.* ¶¶ 90–91. Briseno then contacted ONA, where she spoke to Ounis and provided him with her medical records to prove she was never committed. *Id.* ¶ 107–121. But Briseno asserts that Ounis

took no action to address her request, instead telling her to file an Application to obtain a Certificate. *Id.* Plaintiff contends that Ounis' failure to take action deviated from federal rules requiring ONA to correct or remove records from the NICS database once made aware that there is no basis for such a record. *Id.* ¶ 144.

In order to complete the Application, Briseno was required to provide OMH with medical and hospital records along with other personal information. Compl. ¶ 155. In order to receive further consideration of her Application by the Panel Members. plaintiff was required to both undergo a forensic psychiatric examination conducted by an OMH psychiatrist and have her husband be interviewed. *Id.* ¶¶ 175–177. Plaintiff refused. withdrew her application, and the Panel Members confirmed that her application was indeed withdrawn. *Id.* ¶¶ 178–182.

However, plaintiff alleges receiving a letter from the Panel Members dated January 7, 2025 informing her that a Certificate had been issued and reported to DCJS and NICS. Compl. ¶ 184. Notably, plaintiff alleges this letter admits "the lack of any documentation indicating that [Plaintiff was] involuntarily admitted to the ACH's [Behavioral Health Unit] …" *Id.* ¶ 188. However, despite the alleged admission that OMH "pushed erroneous data into the NICS Indices[,]" plaintiff contends that none of the defendants "took

any action to cancel the false and erroneous information and remove it entirely from the NICS Indices." *Id.* ¶ 189.

Plaintiff forwarded the Certificate along to the Cayuga County licensing officer who reinstated her few weeks later.  Compl. ¶¶ 196–198. Nevertheless, when plaintiff attempted to purchase a firearm soon after, she received a denial response from the NYSP premised on her May 2020 visit to ACH.  *Id.* ¶ 199–200.  According to Briseno, this denial was the result of defendant Doe 2's "fail[ure] to enter the Certificate of Relief information into the OMH database[,]" causing plaintiff to remain identified as a "prohibited person" in the OMH, DCJS, and NICS databases. *Id.* ¶ 203.  Plaintiff also alleges that, because of Doe 2's failure to act, the NYSP forwarded a letter to the Cayuga County Licensing Officer to once again inform them that plaintiff is a "prohibited person" and requiring that her pistol license be suspended. *Id.* ¶ 204.

Upon review, the Court finds that plaintiff has sufficiently alleged that OMH infringed on her Second Amendment rights when they erroneously reported her to the NICS and DCJS databases as a prohibited person pursuant to § 922(g) despite never having been involuntarily admitted to a hospital to establish Article III standing.  When plaintiff allegedly provided defendants with her medical records to cure this error, she argues that defendants declined to act and instead required her to complete an

Application she declined to pursue.  Then, without explanation, OMH still issued plaintiff a Certificate to plaintiff concluding there was a lack of documentation to substantiate her being listed on the NICS database as a prohibited person.  Finally, plaintiff alleges that even after issuing the Certificate, OMH still failed to properly transmit information to remove her from the NICS and DCJS databases, causing her to be denied in a subsequent attempt to obtain a firearm.  In sum, plaintiff has alleged she was repeatedly injured and denied her Second Amendment rights for over a year when certain errors and inaction by the defendants prevented or delayed her removal from state and federal databases.  Accordingly, the Court finds that plaintiff has satisfied the Article III standing requirements necessary to bring this suit.

## B. <u>Injunctive Relief</u>

Having found that Briseno has standing to proceed against defendants in this matter, but before addressing the parties' substantive arguments, there is one important matter to be addressed.  In the complaint, plaintiff alleges the defendants' violations of her Second Amendment were ongoing and asked the Court for injunctive relief: "[d]irecting [the d]efendants to remove, cancel and otherwise permanently remove Plaintiff's personal identifying information related to the May 2020 hospital visit from the records of OMH,

DCJS, and NICS consistent with 18 U.S.C. § 925A and 28 C.F.R. § 25.10." Compl. ¶ 206.

However, the briefing suggests to the Court that circumstances have changed since the filing of the complaint.  In plaintiff's opposition, she states that her "official capacity claims against Commissioner Sullivan for injunctive relief are withdrawn as moot."  Pl.'s Opp'n, Dkt. No. 19 at 1, n.1.

Indeed, defendants' motion to dismiss was accompanied by a declaration by defendant Ounis.  Ounis Decl., Dkt. No. 15-1.[3]  Apparently, despite issuing Briseno's Certificate in January of 2025, technical issues prevented the update of the NICS and DCJS databases necessary to restore plaintiff's status.  *Id.*  However, Ounis' declaration states that plaintiff's Second Amendment rights were restored when, on June 20, 2025, New York State Information Technology Services "confirmed the issue with the NICS Administration Application was corrected and that [p]laintiff Sharon Briseno's NICS information on OMH's NICS Database was cancelled due to a certificate of relief issued on January 7, 2025."  *Id.* ¶ 25.  In light of this change in circumstances, defendants argued that plaintiff's request for injunctive relief should be denied as moot.  Defs.' Mem. at 34.  Now, given

---

[3]  An initial version of this declaration accompanied the motion was but unsigned.  Dkt. No. 14-2. Thereafter, defendants filed a letter requesting leave to file an amended declaration to add an additional fact and to correct the fact that the declaration which accompanied their motion was inadvertently filed without signature.  Dkt. No. 15-1.

plaintiff's own withdrawal of her request for injunctive relief, plaintiff's complaint will be construed only as seeking monetary and declaratory relief from the defendants.

### C. **Quasi-Judicial and Qualified Immunity**

Plaintiff brings § 1983 claims against the Panel Members, Ounis, Sullivan and Does 1 and 2 for violations of her Second, Fourth, Fourteenth Amendment rights.  In sum, plaintiff alleges that Ounis failed to timely cure the denial of her Second Amendment rights on the basis of her medical records and that the Panel Members exacerbated this by forcing her to apply for a Certificate, confirming she withdrew from the Application process, then confusingly issuing her a Certificate anyway.  *See generally* Compl. Defendants now move to dismiss plaintiff's claims against the Panel Members and Sullivan on the basis of quasi-judicial immunity or, in the alternative, qualified immunity.  In addition, defendants argue that Ounis, as an attorney for ONA, is entitled to qualified immunity.

### 1. Quasi-Judicial Immunity as to the Panel Members

The Panel Members, named solely in their individual capacities, seek dismissal of plaintiff's § 1983 claims against them on the grounds that each possesses quasi-judicial immunity. *See* Defs.' Mem at 19–21.  Defendants argue the Panel Members are entitled to quasi-judicial immunity because they perform functions closely associated with the judicial process.  *Id.*

Briseno opposes, arguing that the Panel Members are not entitled to such immunity because their involvement in this action was "ministerial."  Pl.'s Opp'n at 19–23.  Plaintiff also contends that the Panel Members are not entitled to quasi-judicial immunity because "they have no connection to the judicial process." Dkt. No. 22 at 28.

In support, defendants request that the Court take judicial notice of 14 N.Y.C.R.R. §§ 543.1 and 543.5 to assess the nature of the Panel Members' role in this matter.  Indeed, other courts in this District have taken judicial notice of the applicable New York Correction Rules and Regulations finding that: "courts may take judicial notice of rules or regulations governing certain proceedings to determine whether they are quasi-judicial in nature." *See Richey*, 2025 WL 1836492, at *13 (taking notice of 14 N.Y.C.R.R. §§ 543.1-543.6); *see also K.I., Plaintiff, v. ANN MARIE T. SULLIVAN, M.D., et al, Defendants.*, 2026 WL 571301, at *11 (N.D.N.Y. Mar. 2, 2026) (cleaned up).  Accordingly, judicial notice of 14 N.Y.C.R.R. §§ 543.1-543.6 will be taken here for the same purpose.

"Generally, courts agree that issues of absolute immunity are properly considered under Rule 12(b)(6)." *K.I.*, *Plaintiff*, 2026 WL 571301, at *11 (cleaned up). Further, "[j]udicial and quasi-judicial immunity are both absolute immunities." *Id*. (quoting *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009) (cleaned up).  Federal law regarding the application of quasi-judicial

- 24 -

immunity also applies to state officials being sued in federal courts as to federal claims. *Id.*; *see also Kuck v. Danaher*, 822 F. Supp. 2d 109, 147 (D. Conn. Sept. 29, 2011) (observing "quasi-judicial immunity should only extend to claims against defendants sued in their individual and not official capacities") (cleaned up).

Where quasi-judicial immunity applies, a defendant is entitled "to absolute immunity for acts taken pursuant to [his or her] office." *K.I., Plaintiff*, 2026 WL 571301, at *11 (quoting *Finn v. Anderson*, 592 Fed. App'x. 16, 18–19 (2d Cir. 2014) (cleaned up). As such, "officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Id.* (quoting *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages") (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

Absolute immunity is also conferred to "administrative officials performing functions closely associated with the judicial process because the role of the hearing examiner or administrative law judge ... is functionally comparable to that of a judge." *K.I., Plaintiff*, 2026 WL 571301, at *11 (quoting *Mitchell*, 472 U.S. at 526) (cleaned up). Absolute "judicial immunity is conferred in order to [e]nsure that a judicial officer, in exercising the

authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)) (internal citations omitted). In addition, § 1983 claims "brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *Id.* (quoting 42 U.S.C. § 1983).

Courts consider six factors to determine whether quasi-judicial immunity applies: "(i) 'the need to assure that the individual can perform [his or her] functions without harassment or intimidation;' (ii) 'the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;' (iii) 'insulation from political influence;' (iv) 'the importance of precedent;' (v) 'the adversary nature of the process;' and (vi) 'the correctability of error on appeal.'" *K.I.*, *Plaintiff*, 2026 WL 571301, at *11 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985)). The "immunity analysis is 'functional' and scrutinizes the actual responsibilities of the government official in question in light of the six factors." *Id.* (quoting *Tulloch v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995)).

The six factors set forth in *Cleavinger* are "just a few of the many checks on malicious action by judges." *K.I.*, *Plaintiff*, 2026 WL 571301, at *12 (quoting *Butz v. Economou,* 438 U.S. 478, 512 (1978) (cleaned up)). To

determine whether an official is properly entitled to quasi-judicial immunity, Courts use "a functional approach and look to the particular acts or responsibilities that the official performed." *Id.* (quoting *King v. Simpson*, 189 F.3d 284, 287–88 (2d Cir. 1999)).

Courts complete the functional approach analysis by completing "some factual inquiry to determine if the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity." *K.I.*, *Plaintiff*, 2026 WL 571301, at *12 (quoting *King*, 189 F.3d at 288) (internal citation omitted)). For instance, "a parole board official is absolutely immune from liability for damages when he decides to grant, deny, or revoke parole, because this task is functionally comparable to that of a judge." *Id.* (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998)) (internal citations omitted).

As stated *supra*, two other Courts in this Circuit, upon "taking judicial notice of 14 N.Y.C.R.R. §§ 543.15–43.6 and applying the requisite factors" recently found the same Panel Members named here to be entitled to quasi-judicial immunity in their function as Panel Members of the ONA. *K.I.*, *Plaintiff*, 2026 WL 571301, at *12; *see also Richey*, 2025 WL 1836492, at *14–16. The Court finds no basis to deviate from that conclusion here and, upon review, finds that the six factors, along with the functional approach, weigh in favor of granting Panel Member Defendants quasi-judicial immunity.

Accordingly, plaintiff's claims against the Panel Members will be dismissed on the basis of quasi-judicial immunity.

## 2. Quasi-Judicial Immunity and Sovereign Immunity as to Sullivan

Plaintiff has also asserted § 1983 claims against Sullivan in her official capacity as OMH Commissioner seeking monetary and declaratory relief. Defendants now move to dismiss plaintiff's claims against Sullivan in her official capacity on the basis of quasi-judicial absolute immunity. Defs.' Mem. at 27. However, unlike with the Panel Members, plaintiff has not offered allegations to suggest Sullivan ever considered her Application or personally participated in the denial of her application. Rather, plaintiff only brings suit against Sullivan in her official capacity and as such, Sullivan is not entitled to quasi-judicial immunity. *See Richey*, 2025 WL 1836492, at *16 (finding same); *see K.I., Plaintiff*, 2026 WL 571301, at *11 (citing *Gross*, 585 F.3d at 81 (2d Cir. 2009); *see Kuck*, 822 F. Supp. 2d at 147 (observing "quasi-judicial immunity should only extend to claims against defendants sued in their individual and not official capacities").

Separately, defendants argue that "to the extent that Plaintiff seeks money damages, or retrospective injunctive or declaratory relief, against

Commissioner Sullivan in her official capacity, those claims are barred by Eleventh Amendment." Defs.' Mem., Dkt. No. 14-1 at 26. Plaintiff did not oppose this argument.

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *N.Y.S. Corr. Officers & Police Benev. Ass'n, Inc. v. N.Y.*, 911 F. Supp. 2d 111, 135 (N.D.N.Y. 2012) (quoting *State Emp. Bargaining Agent Coalition v. Rowland,* 494 F.3d 71, 95 (2d Cir.2007) (citing U.S. CONST. amend. XI).

"The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity." *N.Y.S. Corr. Officers & Police Benev. Ass'n, Inc.*, 911 F. Supp. 2d at 111 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90–100 (1984)) (internal citations omitted). Eleventh Amendment immunity extends to state officials sued in their official capacities for retrospective relief." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). As such,"[a]ctions for damages against a state official in his or her official capacity are essentially actions against the state, and will be barred by the Eleventh Amendment unless: (1) Congress has abrogated immunity, (2) the state has consented to suit; or (3) the *Ex*

*parte Young* doctrine applies. *Id*. (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989)).

Defendant Sullivan is a state official being sued in her official capacity as the Commissioner of OMH. The Court is unaware of any basis to find that Congress has abrogated immunity or that the State has consented to this suit. Finally, as discussed *supra*, plaintiff has withdrawn her claim for injunctive relief as to Sullivan. Accordingly, Sullivan is immune from suit under the Eleventh Amendment and each of plaintiff's claims against her will be dismissed.

### 3. Qualified Immunity as to Ounis

Plaintiff also brings § 1983 claims for violations of her Second, Fourth, and Fourteenth Amendment rights against Ounis in his individual capacity as an ONA employee. As best as this Court can tell, plaintiff's contention is that Ounis violated her constitutional rights when he refused to, on the basis of her medical records alone, correct her data in the OMH database. As a result of plaintiff's denial to do so, plaintiff contends she was denied her Second Amendment rights for over a year.

Defendants have moved to dismiss these claims arguing that Ounis is entitled to qualified immunity. Defs.' Mem., Dkt. No. 14-1 at 25–26. Defendants argue plaintiff has failed to explain how ONA's requirement that plaintiff complete an Application to receive a Certificate violated a

constitutional right.  In addition, defendants argue plaintiff has failed to offer any precedent to establish a clearly established right to have OMH correct the NCIS database.

Plaintiff has opposed, arguing that: (1) qualified immunity is disfavored at the motion to dismiss stage in this Circuit; (2) qualified immunity does not to apply to the ministerial acts performed by Ounis; (3) even if the Court wert to find Ounis' acts to be discretionary rather than ministerial, his conduct still violated clearly established statutory or constitutional rights of which a reasonable person would have known; and (4) the state improperly imposed a burden on her by forcing her to obtain a Certificate to restore her Second Amendment rights.  Pl.'s Opp'n, Dkt. No. 19 at 23–29.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit") (emphasis omitted). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). "In addition, qualified

immunity protects state actors when it was objectively reasonable for the state actor to believe that his [or her] conduct did not violate a clearly established right." *Trapani v. Annucci*, 2022 WL 7290107, at \*13 (N.D.N.Y. June 21, 2022), *report and recommendation adopted*, 2022 WL 4008027 (N.D.N.Y. Sept. 1, 2022) (citing *Manganiello v. N.Y.C.*, 612 F.3d 149, 165 (2d Cir. 2010)).  The scope of qualified immunity is broad, and it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Moore v. Peters*, 92 F. Supp. 3d 109, 127 (W.D.N.Y. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "With respect to the legal question and the matter of competence, the officials' actions must be evaluated for objective reasonableness." *Id*. (quoting *Mangianello*, 612 F.3d at 165).

"The Court must evaluate a motion to dismiss based upon qualified immunity accepting 'as true the material facts alleged in the complaint and drawing all reasonable inferences in plaintiffs' favor.'" *Moore*, 92 F. Supp. 3d at 109 (quoting *Warney v. Monroe Cnty.*, 587 F.3d 113, 120 (2d Cir.2009)) (internal citations omitted).  In this Circuit, granting qualified immunity at the motion to dismiss stage is disfavored.  *Id*. (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)) (Generally, "the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted.")  "[A] defendant asserting a qualified immunity defense on a motion to dismiss 'faces a

formidable hurdle ... and is usually not successful.' " *Id.* (quoting *Barnett v. Mt. Vernon Police Dep't,* 523 F.App'x 811, 813 (2d Cir.2013) (internal citations omitted). "The defense will succeed only where entitlement to qualified immunity can be established 'based [solely] on facts appearing on the face of the complaint.'" *Id.* (quoting *Barnett,* 523 F.App'x at 813) (internal citations omitted).

Upon review, plaintiff's allegations against Ounis are as follows:  First, Briseno informed Ounis that she was never "involuntarily admitted" at ACH. Compl. ¶ 109.  Next, Briseno provided Ounis with hospital records that she alleges conclusively establish she was never involuntarily admitted.  *Id.* ¶ 111.  Plaintiff demanded that Ounis remove her from the OMH, DCJS, and NICS databases on this basis.  *Id.* ¶ 114.  Despite reviewing these records, Ounis did nothing to restore plaintiff's rights, instead telling her she was required to complete an Application to obtain a Certificate.  *Id.* ¶ 150.

Upon review, the Court declines to find that Ounis is entitled to qualified immunity at this pre-answer stage.  It is unclear from the facts on the face of the complaint that qualified immunity can be established.  Even so, plaintiff's claims against Ounis fail to plausibly state a claim for relief.  In sum, plaintiff's claim against Ounis is that he failed to cure her issue after she provided her medical records, presumably in violation of 14 N.Y.C.R.R. § 543.6.

NYCRR § 543.6 sets forth that OMH, "on being made aware that the basis under which a record was made available by the office to the NICS does not apply or no longer applies, shall, as soon as practicable […] update, correct, modify or remove the record from any database that the Federal or State government maintains and makes available to the National Instant Criminal Background Check System, consistent with the rules pertaining to that database."  N.Y.C.R.R. § 543.6.

Plaintiff also points to 28 CFR § 25.10 in support of her claims against Ounis. This provision, which governs the correction of erroneous information in the NICS database, (1) requires that OMH ensure the information contained in the NICS database is up to date, (2) allows for an individual to submit an Application to obtain a Certificate and allows for an individual to bring an action against the party responsible for providing erroneous information.

But plaintiff has not plausibly alleged that Ounis violated either of these provisions or otherwise violated her constitutional rights.  Rather, Ounis directed plaintiff to submit an Application to obtain a Certificate as set forth under 28 C.F.R. § 25.10.  Nor has plaintiff plausibly alleged that Ounis was required to act more quickly than he did by accepting her medical records on their face and not require her to submit an Application.  Put differently, plaintiff has not plausibly alleged that Ounis was obliged to correct the

record solely based upon her medical records yet failed to do so, or that her medical records alone were sufficient to warrant relief under N.Y.C.R.R. § 543.6. While plaintiff has alleged that OMH inexplicably issued her the Certificate later without her ever submitting an Application, she has not plausibly alleged facts to suggest her constitutional rights were violated by Ounis' actions or inactions. Accordingly, plaintiff's claims against Ounis will be dismissed.

### D. <u>Doe Defendants</u>

Having determined that plaintiff's claims against all named defendants must be dismissed, the Court turns to the remaining two Doe Defendants. Neither party addressed these defendants in their respective briefs, but the Court will address plaintiff's claims against them here.

Plaintiff has brought claims against unnamed Doe 1 and Doe 2 for violations of her constitutional rights. First, plaintiff alleges that Doe 1, an OMH employee, was responsible for the Audit that yielded the erroneous reporting of her "involuntary admission" to OMH and ultimately the NICS and DCJS databases. Next, she alleges that Doe 2 failed to timely process her Certificate which prolonged the denial of her Second Amendment rights.

Upon review, plaintiff fails to plausibly allege constitutional violations against either unnamed defendant. Plaintiff's claims against each of these defendants are bare conclusions. As to Doe 1, plaintiff has not alleged any

facts to support the assertion that the defendant directed, conducted, or otherwise supervised the audit of ACH.  Similarly, plaintiff's contention that Doe 2 failed to process or otherwise enter the Certificate issued by ONA to remove her from the NICS or DCJS databases is entirely conclusory.  Accordingly, plaintiff's claims against these defendants will be dismissed.

## V.  **CONCLUSION**

Defendant's motion to dismiss plaintiff's complaint is GRANTED.  The Panel Members are immune from suit under the doctrine of quasi-judicial immunity.  Sullivan, acting in her official capacity, possesses sovereign immunity under the Eleventh Amendment.  While Ounis is not entitled to qualified immunity at this pre-answer stage, plaintiff has failed to plausibly allege any § 1983 claims against him for which relief could be granted.  Finally, the Doe Defendants will be dismissed because plaintiff has failed to plausibly allege a § 1983 claim against them for which relief can be granted.

Therefore, it is

ORDERED that

1.  Defendant's motion to dismiss (Dkt. No. 14) is GRANTED; and

2.  Plaintiff's complaint is dismissed.

The Clerk of the Court is directed to terminate the pending motion and enter a judgment accordingly.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  March 23, 2026
         Utica, New York.